UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

YOLANDA CHIGANO,                              )
                                             )
                    Plaintiff,               )
                                             )
v.                                           )       No. 3:20-CV-00256-HBG
                                             )
KILOLO KIJAKAZI[1],                          )
Acting Commissioner of Social Security,      )
                                             )
                    Defendant.               )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 16]. Now before the Court are Plaintiff's Motion for Summary Judgment [Doc. 17] and Defendant's Motion for Summary Judgment [Doc. 22]. Yolanda Chigano ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On June 22, 2017, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, claiming a period of disability that began on June 1, 2013, but was subsequently amended to June 20, 2016. [Tr. 90, 92, 108, 174, 193]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 123–26]. A hearing was held on February 6, 2019. [Tr. 140]. On

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration ("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

April 15, 2019, the ALJ found that Plaintiff was not disabled.  [Tr. 12–30].  The Appeals Council denied Plaintiff's request for review on April 14, 2020 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on June 10, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act.  [Doc. 1].  The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2018.

2.  The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of June 20, 2016, through her date last insured of December 31, 2018 (20 CFR 404.1571 *et seq.*).

3.  Through the date last insured, the claimant had the following severe impairments:  degenerative disc disease; scoliosis; and Grade I spondylolisthesis of L3-L5 and foraminal narrowing at C7-T2 (20 CFR 404.1520(c)).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except lift and/or carry 10 pounds occasionally, less than 10 pounds frequently; sit, with normal breaks, for a total of six-hours per eight-hour workday, but only stand and/or walk, even with normal breaks, for a total of two-hours per eight-hour workday; must be permitted to utilize a hand held assistive device while

2

standing and walking and while carrying up to five-pounds in the other hand; no climbing ladders, ropes, or scaffolds; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; and push/pull frequently with the right lower extremity.

6. Through the date last insured, the claimant was capable of performing past relevant work as an Eyeglasses Inspector and Frames Inspector. These occupations did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

[Tr. 18-26].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762,

773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

4

in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1.  If claimant is doing substantial gainful activity, he is not disabled.

2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137,

5

146 (1987)).

## V. ANALYSIS

Plaintiff argues first that the ALJ committed reversible error in failing to find that Plaintiff's impairments meet and/or equal the criteria of Listing 1.04. [Doc. 18 at 12]. Plaintiff also argues that the ALJ failed to comply with 20 C.F.R. § 404.1520c in determining the weight given to the medical opinions in the file and that the ALJ's Residual Functional Capacity Assessment ("RFC") was not supported by substantial evidence because the ALJ found Dr. Sunil M. John's opinion to be "unpersuasive," while finding the one-time consultative examiner's opinion to be partially persuasive and non-treating, non-examining medical consultants' opinions to be persuasive without "good reasons." [*Id.* at 16]. Plaintiff requests for the final decision of the Commissioner to be reviewed and reversed and alternatively requests for the Court to remand her claim for further consideration of the evidence and the law. Both issues raised by Plaintiff will be addressed in turn.

### A. Listing 1.04

Plaintiff claims that the ALJ improperly found that she did not meet Listing 1.04. [*Id.* at 12]. Plaintiff contends that the ALJ only offered a conclusory and inaccurate statement that the Plaintiff did not meet any listing, depriving the Court of an opportunity to perform meaningful judicial review and violating his duty to complete step three of his analysis. [*Id.* at 12–14]. Plaintiff claims that the ALJ "failed to properly apply the sequential evaluation to this case and analyze the evidence under the listings resulting in the erroneous finding that Mr. Chigano [sic] did not meet a listing." [*Id.* at 15]. Plaintiff stresses that this was not harmless error by the ALJ because "the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits . . . ." [*Id.* at 15–16

6

(quoting *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)]. The Commissioner argues that the ALJ properly found that the Plaintiff did not meet or equal Listing 1.04 and that the ALJ's finding is supported by substantial evidence. [Doc. 23 at 7]. The Commissioner agrees with Plaintiff "that the ALJ inaccurately said that the evidence did not show nerve root impingement[,]" but maintains that "such an error is harmless because Plaintiff has failed to meet her burden of establishing that she met *every* requirement of Listing 1.04A." [*Id.* at 9 (citing Doc. 18 at 15)].

At step three of the sequential evaluation, a claimant may establish disability by demonstrating that his impairment is of such severity that it meets, or medically equals, one of the listings within the "Listing of Impairments" codified in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *Foster v. Halter*, 279 F.3d 348, 352 (6th Cir. 2001). The Listings describe impairments that the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits, but the claimant has the burden to prove that all of the elements are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Walters*, 127 F.3d at 529. Only when an impairment satisfies all of the Listing's criteria will the impairment be found to be of listing level severity. 20 C.F.R. § 404.1525(d).

In determining whether an impairment is of listing level severity, the ALJ is tasked with comparing the medical evidence of record with a Listing's requirements. *Reynolds*, 424 F. App'x at 415. However, the Sixth Circuit rejected "a heighted articulation standard" with regard to the ALJ's step three finding. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). "If a

7

claimant does not have one of the findings, however, she can present evidence of some medical equivalent to that finding." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011) (citations omitted). Yet, it is not sufficient to come close to meeting the conditions of a Listing. *See, e.g.*, *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (affirming Commissioner's decision that Plaintiff didn't meet Listing where medical evidence "almost establishes a disability"). Listing 1.04 covers disorders of the spine, including degenerative disc disease, and requires that the disorder result in "compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. Listing 1.04(A) further requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.* Accordingly, in addition to demonstrating a spinal disorder that results in the "compromise of a nerve root," Plaintiff must show (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss, (4) sensory or reflex loss, and (5) sitting and supine positive straightleg test results, in order to meet the requirements of Listing 1.04(A). *Id.*

In the disability decision, the ALJ stated that he "considered all of the claimant's impairments individually and in combination, and [found] the evidence of record does not support the level of severity contemplated in the relevant listings identified in 20 CFR Part 404, Subpart P, Appendix 1, including 1.04." [Tr. 20]. The ALJ said, "[s]pecifically, radiographic evidence from June 2016 and March 2018 find no conclusive evidence showing nerve root impingement, evidence of spinal arachnoiditis, or pseudoclaudication." [*Id.* (citing Exh. B7F, pp. 2, 5, 7, and 8)]. Thus, because of the radiographic evidence, the ALJ concluded Plaintiff did not meet the

requirements of Listing 1.04(A), (B), or (C).  [*Id.*]; *see* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04(A)–(C).[2]

Plaintiff challenges the ALJ's step three analysis, arguing that the listing determination was inaccurate and that he provided merely "a conclusory statement that the claimant did not meet or equal any listing." [Doc. 18 at 12–13].  Plaintiff also argues that this alleged error was not harmless because if Plaintiff were to meet a listing then she would be *per se* disabled under the regulations. [*See id.* at 13].  Plaintiff claims that the ALJ "failed to properly apply the sequential evaluation to this case and analyze the evidence under the listings resulting in the erroneous finding that Mr. Chigano [sic] did not meet a listing."  [*Id.* at 14–15].  Plaintiff takes serious issue with the ALJ allegedly failing to analyze evidence for the additional requirements in Listing 1.04 after concluding that Plaintiff did not have nerve impingement.  [*Id.* at 15].  Plaintiff provides that the "March 28, MRI of the lumbar spine noted moderate to severe foraminal stenosis on the right **with right-sided L3 impingement**" as evidence of nerve root impingement.  [*Id.* (citing Tr. 547)].

Plaintiff, after asserting that evidence of nerve root impingement existed, then argues that the impingement was "characterized by limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss, and positive straight leg testing."  [*Id.*].  Plaintiff cites to the record as follows:

> On June 20, 2016, Dr. John with SMG noted on physical exam, Ms. Chigano had edema in her extremities, severe pain on range of motion in the lumbar spine and right hip tenderness, decreased sensation at L3/4/5, her right hip flexor was 3/5,

---

[2] The Court notes that the Plaintiff does not appear to dispute the ALJ's determination that no conclusive evidence of spinal arachnoiditis or pseudoclaudication existed which are requirements under Listing 1.04(B) and (C), respectively.  Thus, the Court's analysis will be limited to the dispute regarding Listing 1.04(A).

9

quad 3/5, hamstring 4/5, balance and gait unsteady, with positive Babinski reflex on the left. (AR 389). On November 18, Dr. John at SMG noted that Ms. Chigano had positive straight leg raise on the right lower extremity at 15 degrees and on the left lower extremity at 60 degrees. (AR 375). On June 12, 2017, Ms. Chigano returned to Dr. John at SMG, who noted that her pain generators were related to lumbosacral degenerative disc disease and severe thoracic scoliosis. (AR 359). On physical exam, Ms. Chigano had a positive straight leg raise on the left lower extremity at 90 degrees and had a positive straight leg raise on the right lower extremity at 30 degrees. (AR 361). She had decreased sensation in her right lower extremity from L3/4. (AR 361). She was noted to have asymmetric and levoscoliosis of the thoracic. (AR 361). On May 7, 2018, on physical exam, Ms. Chigano had edema of the lower leg that is 1+ non-pitting, and right lower extremity hyperesthesia and muscle atrophy. (AR 514).

[Id]. Plaintiff thus argues that the ALJ's analysis for determining whether she met the requirements of Listing 1.04 was flawed such that a remand of the disability decision is warranted.

The Commissioner argues that the ALJ properly determined that the Plaintiff did not meet Listing 1.04, and that the ALJ's determination is supported by substantial evidence. [Doc. 23 at 7]. The Commissioner argues that the Plaintiff's assertions that the ALJ's determination regarding the existence of nerve impingement and subsequent failure to analyze the record for the additional requirements in the listing "are unfounded because Plaintiff must meet all elements of the listing, and she does not." [Id.].

As noted previously, the Commissioner does not dispute Plaintiff's contention that the ALJ inaccurately stated that the evidence did not show nerve root impingement. [Id. at 9 (citing Tr. 547)]. The Commissioner asserts, however, that this was harmless error "because Plaintiff has failed to meet her burden of establishing that she met *every* requirement of Listing 1.04A." [Id.]. The Commissioner argues that Plaintiff made only a *general* assertion that she meets the Listing 1.04A requirements because she failed to show that the evidence cited by the Plaintiff specifically proves that she has met *all* of the necessary criteria. [Id.].

10

The Commissioner argues, and the Court agrees, that the Plaintiff failed to establish that she met all of the requirements of Listing 1.04A *simultaneously*. [*Id.* at 10]. The Commissioner correctly states that the June 20, 2016 examination relied on in Plaintiff's brief does not indicate that Plaintiff suffered from a limited range of motion of the *spine*, atrophy, or muscle weakness, or a positive straight leg test. [Tr. 389]. The November 18, 2016 examination does not indicate a limited range of motion of the spine, sensory or reflex loss, or a positive straight leg raise test in both the sitting *and* supine positions. [Tr. 375–76]. The June 12, 2017 examination does not indicate a limited range of motion of the spine or a positive straight leg test in both the sitting and supine positions. [Tr. 359, 361]. The May 7, 2018 examination does not indicate a limited range of motion of the spine or a positive straight leg test. [Tr. 514].

Plaintiff "must point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). "Because satisfying the listings during the third step yields an automatic determination of disability based on medical findings, rather than a judgment based on all relevant factors for an individual claimant, the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) (citing 20 C.F.R. §§ 416.925(d), 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). The Court also notes that:

> [W]hen the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A. An individual who shows only some of the criteria on examination presents a different, less severe clinical picture than someone with the full set of criteria present simultaneously. To meet the severity required by the listing, our policy requires the simultaneous presence of all of the medical criteria in listing 1.04A.

11

Soc. Sec. Acquiescence Ruling (AR) 15-1(4), 80 Fed. Reg. 57418-02, 2015 WL 5564523, at *57420 (Sept. 23, 2015).  Thus, the Court agrees with the Commissioner, finding that the Plaintiff has failed to show that she met all of the requirements of Listing 1.04A and, further, that she met all of the requirements simultaneously.  Even considering that the ALJ failed to identify the evidence showing nerve root impingement [Tr. 547], the Plaintiff has failed to meet her burden to demonstrate that she has met all requirements of Listing 1.04A, making the ALJ's error harmless under these circumstances.

Likewise, the ALJ's determination being "conclusory" as Plaintiff alleges does not invalidate the disability decision.  "The Sixth Circuit has declined to adopt a blanket rule that remand is required whenever an ALJ 'provides minimal reasoning at step three of the five-step inquiry.'"  *Wischer v. Comm'r of Soc. Sec.*, No. 13-cv-180, 2015 WL 518658, at *12 (S.D. Ohio Feb. 6, 2015), *report and recommendation adopted by*, 2015 WL 1107543 (S.D. Ohio Mar. 11, 2015) (quoting *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 364–66 (6th Cir. 2014)).  In *Forrest*, the Sixth Circuit upheld the ALJ's conclusory finding at step three for two reasons:  (1) the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three; and (2) even if the ALJ's factual findings failed to support his step three findings, the error was harmless because the plaintiff had not shown his impairments met or medically equaled in severity any of the listed impairments.  591 F. App'x at 366.

The ALJ's decision regarding step three was supported by substantial evidence in the record.  As the Commissioner points out, the June 2016 and March 2018 MRIs of Plaintiff's spine did not show a significant worsening of Plaintiff's condition and were considered by the ALJ.  [Tr. 20–24, 540–41, 544, 546–48].  As well, the ALJ considered that the Plaintiff reported some relief in her back pain stemming from her use of pain medication and also denied any symptoms related

12

to back pain, joint pain, joint swelling, or muscle weakness. [Tr. 22, 378, 380]. Plaintiff's doctor described her functional capacity as "much improved & stable" in November 2016. [Tr. 22, 373]. Plaintiff's doctor did not prescribe Plaintiff an assistive device despite the Plaintiff reporting falls in February and May of 2017. (Tr. 22, 366, 371). The ALJ also considered the October 2017 consultative examination in which the examiner noted normal muscle mass bulk and tone, normal reflexes, preserved sensation, and a negative straight leg raise test in the seated and supine positions. (Tr. 22, 502). In May 2018, Plaintiff reported that she was doing relatively well with her pain medication regimen, and her doctor provided that her functional status was good on her chronic regimen. (Tr. 23, 511). In August 2018, Plaintiff's doctor provided that her functional status was stable and that she also did chores around the house with frequent breaks. (Tr. 24, 506). In December 2018, Plaintiff's doctor noted her functional status as being stable. (Tr. 24, 535).

Thus, the Court finds that the ALJ properly determined that Plaintiff did not meet the listing requirement, and his decision is supported by substantial evidence. Therefore, remand is not warranted on the ALJ's decision regarding the Plaintiff's failure to meet the requirements under Listing 1.04.

### B. ALJ's Evaluation of the Medical Opinion Evidence and the RFC Finding

Plaintiff also argues that the ALJ's RFC finding was not supported by substantial evidence because the ALJ "found Dr. John's opinion 'unpersuasive', while finding the one-time consultative examiner's opinion partially persuasive and non-treating, non-examining medical consultants' opinions persuasive without 'good reasons.'" [Doc. 18 at 16]. The Commissioner argues that the ALJ "properly evaluated the medical opinions and prior administrative medical findings pertaining to Plaintiff's physical impairments in accordance with the regulations, and substantial evidence supports the ALJ's evaluation as well as the entire residual functional capacity finding." [Doc. 23

13

at 12]. The Commissioner asserts that "[i]n complying with the regulation requirements, the ALJ appropriately considered and found the prior administrative medical findings of state medical consultant Dr. Patikas and Dr. Thrush to be persuasive, the medical opinion of consultative examiner Dr. Summers to be 'somewhat persuasive,' and the opinions from treating physician Dr. John to be not persuasive." [Tr. 23–24].

The Plaintiff states that "the ALJ justified giving 'persuasive weight" to non-examining, non-treating state agency medical consultants Dr. Patikas and Dr. Thrush because they are familiar with the disability problems, their opinions are based on their medical specializations, they had familiarity with the evidence of record as a whole, and treatment records received at the hearing level do not indicate she is significantly more limited." [Doc. 18 at 16 (citing Tr. 23)]. However, Plaintiff argues that even though those are the factors listed in 20 C.F.R. § 404.1520c, "it is unclear how these factors would lead to their opinions being more persuasive than the treating doctor's opinions." [Id. at 16–17]. Plaintiff seems to take major issue with the ALJ determining that the opinion of Dr. Patikas—a specialist in pediatrics whose opinion is nearly "identical" to Dr. Thrush's, a specialist in surgery—was more persuasive than that of Plaintiff's primary care doctor. [Id. at 17 (citing Tr. 89, 105, 106)]. The Plaintiff also claims that the ALJ incorrectly determined that the medical consultants had familiarity with the evidence of record as a whole. [Id.]. Plaintiff says this is because Dr. Patikas—who noted reviewing records from October 3, 2014 to June 12, 2017 and Dr. Jeffrey Summer's physical consultative evaluation, which she found to be partially persuasive—did not reference reviewing the June 28, 2016 Lumbar MRI, and her opinion was formed prior to the updated March 28, 2018 thoracic and lumbar MRIs. [Id.].

Plaintiff contends that the ALJ did not discuss the other 20 C.F.R. § 404.1520c factors, including relationship with the claimant among other things. [Id.]. Plaintiff argues that Drs.

14

Patikas and Thrush never treated or examined Plaintiff and, giving the Court cause to question the ALJ's analysis because that demonstrates that the opinion assessment conducted by the ALJ fell short of the Commissioner's regulations, at least when the ALJ fails to apply the same level of scrutiny to the opinions of consultative doctors on which he or she relied. [*Id.* (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013))].

Plaintiff claims that the ALJ conducted a selective discussion of Dr. John's treatment notes in his decision to find Dr. John's opinion to be unpersuasive. [*Id.* at 18]. Plaintiff states that the ALJ "did not discuss a single physical examination performed by Dr. John, [but] instead the ALJ only noted the portions of the notes which supported his conclusion." [*Id.*]. Plaintiff says that the ALJ "failed to note that Dr. John stated that Ms. Chigano was at SMG for severe scoliosis, degenerative disc disease, and spinal stenosis causing severe back pain and right leg pain, weakness, and numbness[,]" and at the same visit in July 2017, "Dr. John noted on physical exam that Ms. Chigano's gait was a limp, her thoracic and lumbar range of motion caused severe pain due to scoliosis, right hip tenderness, and right knee tenderness." [*Id.* (citing TR. 383, 385)]. Plaintiff's argument here is generally that the record as a whole indicates that Plaintiff's back pain was described as moderate to severe but was worsening and persistent. [*See id.* at 18–19].

Plaintiff argues that Dr. John's opinion should have been given more persuasive weight "based on a variety of factors including his treatment relationship with Ms. Chigano . . . ." [*Id.* at 19]. Further, Plaintiff argues that the inconsistencies in Dr. John's opinion cited by the ALJ went unexplained in the disability decision beyond vague statements concerning functional abilities and pain levels. [*Id.* at 20]. Lastly, Plaintiff takes issue with the ALJ finding Dr. Jeffrey Summer's opinion to be partially persuasive even though it was also inconsistent with the record. [*Id.* (citing Tr. 24)].

15

The Commissioner argues that the ALJ's evaluation of the medical opinions and prior administrative medical findings pertaining to Plaintiff's physical impairments was proper and in line with the relevant regulations. [Doc. 23 at 12]. The Commissioner maintains that the ALJ's evaluations and resulting RFC finding are supported by substantial evidence. [*Id.*].

At the outset, the treating physician rule is not applicable in Plaintiff's case, as the ALJ was instead tasked with considering the persuasiveness of the medical opinions. Under the SSA's revised regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Here, due to the lack of extensive case law or Sixth Circuit guidance on the updated regulations, the Court largely focuses on the regulatory language. In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors," and requires the ALJ to address these two factors in evaluating medical opinions or prior administrative medical findings. 20 C.F.R. § 404.1520c(b)(2). In evaluating the supportability of a medical opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2).

"Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of his reasoning."

16

*White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021). However, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering the RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).

The ALJ found the functional limitations assessed by state medical consultants Drs. Patikas and Thrush to be persuasive as part of his evaluation of the prior administrative medical findings. [Tr. 23]. Particularly, the ALJ found the opinions to be persuasive because "they provided specific references to the objective medical evidence that are relevant to the claimant's physical conditions, and provided clear explanations as to how they came to their findings." [Tr. 23, 86–89, 103–06]. Further, the ALJ found that the findings were consistent with Dr. Summers's examination notes and with the radiographic evidence showing that Plaintiff's back issues had not significantly worsened since the previous ALJ decision. [Tr. 23, 86–89, 103–06, 500–03, 540–41, 544–48]. The ALJ discussed the supportability and consistency factors and the fact that Drs. Patikas and Thrush "provided opinions based in their medical specializations, they understand Social Security disability program's policy and evidentiary requirements, they had familiarity with evidence of record as a whole prior to rendering their findings, and treatment records received at the hearing level do no indicate the claimant has subsequently become significantly more limited than determined by Drs. Patikas and Thrush." [Tr. 23, 506–39, 544–52 (citing Exh. B4F, p.4, B5F-B7F)]. The ALJ did add "a limitation to requiring a hand-held assistive device for ambulation, which . . . does not alter the claimant's ability to perform her past relevant work." [Tr. 23].

The ALJ found consultative-examiner Dr. Summers's medical opinion to be "somewhat persuasive" because "the lift/carry and postural limitations are consistent with Dr. Summers' findings on examination and with the physical exams noted in the treatment records from Southern

17

Medical Group." [Tr. 23–24 (citing Exhs. B1F, B2F, B5F, and B6F)]. However, the ALJ found "little support for worsening in the claimant's medical condition that would prevent her from sitting, standing, or walking for greater than two-hours continuously or four hours total in a single workday, as such limitations are internally inconsistent with Dr. Summers' own findings on examination that show normal strength and muscle tone, and a negative straight leg raise." [Tr. 24].

The ALJ found Dr. John's various functional opinions to be unpersuasive because they were inconsistent with the medical treatment notes provided by him and with the physical examination findings of Dr. Summers. [Tr. 24]. On Plaintiff's amended alleged onset date of June 20, 2016, and again on August 2, 2018, Plaintiff received follow up care from Dr. John where he stated she was "medically disabled" and was unable to work 40 hours a week consistently. [Tr. 24, 287, 506]. However, at the August 2, 2018 visit, Dr. John also noted Plaintiff's functional status was stable and she did chores around the house but had to take frequent breaks. [Tr. 24, 506]. At a follow-up visit on November 30, 2018, Dr. John stated Plaintiff "is clearly disabled[.]" [Tr. 24, 530]. That same date, Dr. John provided a medical source statement that indicated Plaintiff could perform a significantly reduced range of sedentary exertional work activities with several non-exertional limitations, including a requirement to use a cane to ambulate. (Tr. 24, 553–58). On December 31, 2018, Dr. John stated Plaintiff's "functional status is markedly limited and she is unemployable in terms of regular and consistent 40 hr work week[.]" (Tr. 24, 535).

In finding Dr. John's functional opinions to be inconsistent, the ALJ also considered that Dr. John repeatedly noted that the claimant's "functional capacity is much improved & stable[,]" and "it appears Dr. Johns [sic] treated the claimant primarily for complaints of pain and management of chronic pain medications, and review of these records show numerous

18

inconsistencies between the claimant's reported functional abilities, pain levels, and use of medication, despite no significant worsening of the claimant's condition reported on radiographs taken in 2016 and 2018." [Tr. 24]. Lastly, the ALJ noted that:

> despite Dr. John's indication that the claimant requires use of a cane on the functional evaluation, his own treatment notes indicate he repeatedly advised the claimant to be careful walking and does not appear to have actually prescribed a cane for the claimant at any point during his treatment. Despite such inconsistencies, I have given the benefit of doubt to the claimant and included a requirement for use of a hand-held assistive device in the assessed residual functional capacity herein.

[*Id.*].

The Court finds that the ALJ's evaluations regarding the persuasiveness of each medical opinion were made with "good reasons," were conducted in accordance with 20 C.F.R. § 404.1520c and other relevant regulations including discussions of supportability and consistency, and substantial evidence supports the ALJ's persuasiveness findings and disability decision. The Commissioner correctly states that the ALJ is not to weigh the medical opinions nor decide the particular weight each opinion should be afforded. [Doc. 23 at 15]. Consequently, Plaintiff's assertion that "the ALJ must weigh the opinions offered by the medical sources providing evidence in the record and determine what weight to afford each of the opinions" is incorrect. [Doc. 18 at 16].

Since Plaintiff's claim was filed after March 27, 2017, the SSA's new regulations for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the new revised regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from your medical sources." 20 C.F.R.

19

§ 404.1520c(a). The Commissioner will "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the following factors: 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; 4) the source's specialized area of practice; and 5) other factors that would tend to support or contradict a medical opinion, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520(a), (c)(1)-(5). However, supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520(c)(b)(2).

Lastly, the revised regulations have set forth new articulation requirements for the ALJs in their consideration of medical opinions, stating:

> **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually;

> **(2) Most important factors.** The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we

20

articulate how we consider medical opinions and prior administrative medical findings in your case record;

**(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)-(3) (emphasis added); *see, e.g.*, *Kilgore v. Saul*, No. 1:19-CV-168-DCP, 2021 WL 932019, at *11 (E.D. Tenn. Mar. 11, 2021).

Additionally, the Revised Regulations explain, "[a] prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review . . . in [a claimant's] current claim based on their review of the evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1513(a)(5).

When two or more medical opinions about the same issue are both equally well-supported and consistent with the record, but are not exactly the same, the ALJ is required to "articulate how [he/she] considered the other most persuasive factors" of relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. 20 C.F.R. § 404.1520c(b)(3).

The Court finds no merit in Plaintiff's apparent argument that Dr. Patikas's specialization as a pediatrician should make her resulting medical opinion less persuasive to the ALJ. Further, the Plaintiff cites to no authority suggesting that a specialist's opinion should be expressly *limited* to opinions on matters he or she would be uniquely suited to deal with. As stated above, specialization is but one of many factors that the ALJ must consider, and certain specialists may be *more* persuasive depending on the subject matter of the opinion. For example, "[s]tate agency

21

medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)).  Thus, it may be that a state agency medical consultant is more persuasive when offering opinions on medical issues relevant to a disability claim in certain circumstances.

Plaintiff argues that the ALJ failed to discuss all the factors listed in 20 C.F.R. § 404.1520c(c).  [Doc. 18 at 17].  This argument fails for various reasons.  In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors," and requires the ALJ to address these two factors in evaluating medical opinions or prior administrative medical findings.  20 C.F.R. § 404.1520c(b)(2).  The ALJ did, in fact consider supportability and consistency when evaluating the opinions of Drs. Patikas and Thrush.  [*See supra* pp.17–18; Tr. 23, 506–39, 544–52 (citing Exh. B4F, p.4, B5F-B7F)].  The ALJ need not explain how he considered each factor in 20 C.F.R. § 404.1520c(c)(3)–(5) absent the ALJ finding that two opinions are "equally" persuasive.  *See* 20 C.F.R. § 1520c(b)(2), (3).  The Court finds that Plaintiff's argument here fails because the ALJ made no such finding.

Plaintiff also argues that Dr. Patikas's opinion should not have been persuasive to the ALJ because of a failure to reference Plaintiff's June 2016 MRI in her opinion and because her opinion was provided before Plaintiff's 2018 MRIs.  [Doc. 18 at 17].  Dr. Patikas referenced reviewing a June 28, 2015 MRI of Plaintiff's lumbar spine, but—as the Commissioner points out—it is likely that this was a mere typographical error because Plaintiff did not have an MRI on June 28, 2015.  [Tr. 88].  In any case, Dr. Patikas did review Plaintiff's February 2015 MRI which was mostly unchanged from the June 2016 MRI.  [Tr. 88, 540–41].  It was appropriate for the ALJ to consider

22

and rely upon Dr. Patikas's findings from her review on December 11, 2017 because Plaintiff alleged an amended onset date of June 20, 2016. [Tr. 193, 86–89]. Dr. Patikas's findings occurred after the alleged onset date and during the period of Plaintiff's alleged disability. The Court also notes that the ALJ did not "exclusively" rely on Dr. Patikas's findings. [Tr. 20–25].

Plaintiff's argument that the ALJ selectively discussed Dr. John's treatment notes and failed to discuss any physical examination conducted by him is also without merit. The ALJ expressly addressed Dr. John's June 20, 2016 examination and the examination on August 19, 2016. [Tr. 21–22]. As detailed above, the ALJ used a considerable part of his decision evaluating Dr. John's opinion, and substantial evidence exists for the ALJ's finding that his opinions were unpersuasive. [Tr. 21–24]. The ALJ also found Dr. John's opinion regarding the medical necessity of a cane to be inconsistent with his treatment notes and the lack of a prescription for a cane for Plaintiff from Dr. John. [Tr. 22, 24, 366, 371, 376, 554].

The Court finds that substantial evidence existed for the ALJ's evaluations of each medical opinion's persuasiveness. The Court also finds that in making the RFC finding for Plaintiff, the ALJ appropriately considered Plaintiff's subjective symptoms. [Tr. 21 ("[Plaintiff] advised that her conditions affected her abilities to lift, squat, bend, stand, reach, walk sit kneel, climb stairs, complete tasks, and use her hands. [Plaintiff] reported that due to back pain and nerve damage she was 'unable to lift or stand for long periods of time' and could not 'walk good, so I have to lay down and elevate my legs.'")]. The ALJ found specifically that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [*Id.*]. The ALJ considered imaging of Plaintiff's spine through the Plaintiff's June 2016 MRI [Tr. 21–22] and the Plaintiff's March 2018 MRI [*id.*] in making this determination.

The ALJ also considered Dr. Summers's consultative evaluation and found it to be somewhat persuasive. [Tr. 23]. The ALJ made his determination of Dr. Summers's opinion based on its consistency with his findings on examination and with the physical exams noted in the treatment records from Southern Medical Group. [Tr. 23–24]. The ALJ found "Dr. Johns' various functional opinions not persuasive as they are inconsistent with the medical treatment notes provided by Dr. John . . . as well as the physical examination findings of Dr. Summers." [Tr. 24]. The ALJ also considered that "Dr. John repeatedly notes that the claimant's 'functional capacity is much improved & stable'" and "records show numerous inconsistencies between the claimant's reported functional abilities, pain levels, and use of medication, despite no significant worsening of the claimant's condition reported on radiographs taken in 2016 and 2018." [*Id.*].

Thus, the Court finds that the ALJ properly made the RFC finding for Plaintiff and that substantial evidence exists in the record supporting his finding. Therefore, the Plaintiff has failed to provide the Court with cause to remand the disability decision.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 17**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 22**] will be **GRANTED.** The decision of the Commissioner will be **AFFIRMED.** The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge

24